VICKSBURG, ETC., R. CO. (JACKSON v.).
   See Case No. 7,150.

---

## Case No. 16,933.

### The VICTOR.

[Brown, Adm. 449.] [1]

District Court, E. D. Michigan.   July 1, 1873.

COLLISION—TUG AND TOW—MANNING AND EQUIPMENT OF TUGS.

1. A tug, having a schooner in tow, ran aground upon the bank of Detroit river, and the schooner ran into her. *Held*, that the tug was in fault, because the officer of the deck was also acting as wheelsman, and that the want of a proper lookout on the schooner did not contribute to the collision.

[Cited in The Young America, Case No. 18,-179.]

2. A steamtug, whose master also acts in the capacity of wheelsman, is insufficiently manned.

[Cited in The Coleman, Case No. 2,981.]

This was a libel for a collision between the schooner Victor and the tug Clara, which, at the time of the collision, was towing the schooner through the Detroit river, having taken her at Port Huron, under an agreement to tow her to Lake Erie. While passing Detroit, about midnight, the master of the tug made the green light of a propeller so near ahead that he decided to starboard his helm to pass her. After he had passed the propeller, he endeavored to port his wheel, and resume his course down the river, but owing to the breakage of the links of her port wheel chain, the tug failed to obey her wheel, and, before she could be stopped, ran ashore upon the Canadian side of the river— the schooner coming on without changing her course, and striking the tug upon her starboard quarter, within a few feet of her stern. As soon as he discovered her failure to obey the wheel, and before the tug struck the bank, the master ran aft and hailed the schooner to port, and avoid striking him, but the hail was not heard upon the schooner. The tug, at the time of the collision, was under the charge of the master and wheelsman, nor was there any one upon the deck of the schooner except the wheelsman at the helm, and the mate, who was walking upon the cabin, aft. Neither vessel had a lookout.

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

H. B. Brown, for libellants, argued that the collision was owing to the want of a lookout upon the schooner, and her consequent failure to hear the hail of the tug, and to port her wheel in time to prevent the collision. If a vessel be shown to be in fault for want of a lookout, every doubt with regard to this having contributed to the collision must be resolved against the vessel so in fault. The Ariadne, 13 Wall. [80 U. S.] 475; The Genesee Chief, 12 How. [53 U. S.] 443, 463. The tug was not in fault for running aground, if it was owing to the breakage of her machinery, and the court finds she was provided with proper appliances for navigation—in other words, was seaworthy. 1 Pars. Mar. Ins. 372–376.

L. S. Trowbridge, for claimant, argued that the tug was insufficiently manned, her officers incompetent, her machinery defective, and that no proper signals of danger were given, and that the want of a proper lookout on the schooner did not contribute to the collision.

LONGYEAR, District Judge. The principal fault urged against the schooner is that she had no lookout man on duty. Such appears to be the fact. Did this contribute to the collision? The tug and tow were proceeding down the river at a speed of eight miles an hour. The tow line was 52 fathoms in length in all. Making a reasonable allowance for portions taken up at each end, the length of the line between the two could not have exceeded 45 fathoms, or 270 feet. The proof shows that it would take about half a minute to put the schooner's wheel over hard aport, and that it would take about as much longer for her to begin to swing, making one minute in all. During this period the schooner, at her then rate of speed, would pass over a space of a fraction over 700 feet, or a little over two and a half times the distance between her and the tug. So that even if the tug ran once and a half the distance between the two, or about 400 feet, after the hail was given warning the schooner to port her helm and keep clear, and before the tug grounded, it could have been of no avail if a lookout man had been on duty and had heard the hail and promptly reported the same. The proofs do not show how far the tug did run between the hail and the grounding, but I think it reasonably certain that she did not run more than 400 feet —probably less than that. So that, conceding that the hail given was a proper one, and that it would have been heard and heeded on the schooner if she had had a lookout man on duty, it seems the collision would still have been inevitable, so far as the schooner was concerned. But the hail or signal given was not the usual one in such cases, the usual signal being a blast or blasts from the tug's steam whistle, and the hail given being by the master shouting to the schooner. Besides being unusual, it was evidently much less effective than the usual signal, considering the distance and that the wind was blowing fresh against the direction of the sound. It was not heard on the schooner, and

I think it reasonably certain from the proofs that it could not and would not have been heard by a lookout man if one had been on duty on her at the time. But it is claimed that if there had been a lookout man on duty, the disabled condition of the tug would have been discovered on the schooner sooner than it was by the slackening of the line. But it does not appear that the line slackened perceptibly before the tug grounded, but, on the contrary, I think it reasonably certain from the proofs that such was not the case. It is true, the tug's engine was stopped when it was first discovered that she did not mind her helm, but was started again almost instantly, and at full speed. The headway of the tug could hardly have been checked at all. But when the tug grounded the vessels were only about 270 feet apart, as we have seen, a distance at which, as we have also seen, it was impossible for the schooner to have avoided the tug, at her then rate of speed. I think, therefore, that the want of a lookout man on the schooner did not contribute to the collision. The master of the tug, then in charge of her navigation, was also acting as wheels-man. I think this was a fault, and one not without significance in this case. The responsible character of the occupation of tugs requires that there should be some competent person in charge of their navigation, separate and distinct from the wheelsman, and who has no other duties when the tug is in actual service. The master testifies, that after having starboarded to pass another vessel, and after having put his wheel aport as it was before, it was some ten minutes before he discovered that the tug was not minding her helm and was running in towards the shore; and as appears with reasonable certainty, she was already almost upon the channel bank when he did make the discovery. If his individual attention had been directed to the navigation of the tug, as it ought to have been, and he was competent for the position, he would certainly have made the discovery at once, and a collision would probably have been avoided. Libel dismissed.